945 So.2d 792 (2006)
Joshua N. BARBEROT
v.
The UNITED STATES LIFE INSURANCE COMPANY IN the CITY OF NEW YORK, State Street Bank and Trust Company, and Hibernia National Bank.
No. 06-CA-299.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2006.
*793 E. John Litchfield, Carey B. Daste, Berrigan, Litchfield, Schonekas, Mann, Traina & Bolner, LLC, New Orleans, Louisiana, Arthur J. Lentini, Arthur J. Lentini, PLC, Metairie, Louisiana, for Plaintiff/Appellant.
Covert J. Geary, John B. Rosenquest, IV, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, Louisiana, Andree Matherne Cullens, Edward D. Hughes, Taylor, Porter, Brooks & Phillips, L.L.P., Baton Rouge, Louisiana, Thomas J. Lutkewitte, Favret, Demarest, Russo & Lutkewitte, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and GREG G. GUIDRY.
MARION F. EDWARDS, Judge.
Plaintiff/appellant, Joshua N. Barberot ("Joshua"), appeals a summary judgment in favor of defendants/appellants, United States Life Insurance Company ("U.S.Life"), State Street Bank and Trust Company ("State Street"), and Hibernia National Bank ("Hibernia"), dismissing his claims with prejudice. We affirm in part, reverse in part, and remand.
The following facts are not in dispute: Joshua's father, Patrick L. Barberot, Sr. ("Barberot"), died on February 13, 1999, while in the employ of the Greater New Orleans Expressway Commission. Through his employer, Barberot had an insurance policy with U.S. Life with a *794 death benefit claim of $30,000, naming Joshua the sole beneficiary. On March 23, 1999, Joshua's half-brother, Patrick L. Barberot, Jr. ("Patrick") filled out a claim as "executor of Estate and Guardian of Joshua Barberot." Patrick was notified by U.S. Life that he was not the proper party to claim the proceeds because Joshua was no longer a minor. On April 7, 1999, Joshua went to the Commission's office with Patrick to fill out another claim. According to his deposition, Joshua signed the claim, but left his address blank "because [Patrick] said he'd take care of everything, and at the time I didn't know where I was living." The Director of Human Resources for the Commission, Eileen Barthe ("Barthe"), assisted Joshua in completing the claim, and Joshua assumed that Barthe chose the address listed on the claim form, which was that of Patrick.
The claim form indicated that Joshua elected to receive payment immediately. By doing so, according to the form:
If your proceeds are eligible and exceed the current applicable minimum ($5,000) set by the company, the proceeds will be placed into an interest-bearing account in your name. You may immediately write a check for the full amount or leave your account open and draw money only as you need it. Meanwhile, the funds will earn interest at the variable rate currently effective for United States Life Instant Access Accounts payable through State Street Bank and Trust Company. The Instant Access Account is not available to estates, trusts, or guardianships.
U.S. Life wired the proceeds of the policy to State Street, and, on April 23, 1999, sent a letter to Joshua, at Patrick's address, stating that it was opening an Instant Access Account in his name payable through State Street. The checkbook for this account was sent to the same name and address. It appears from the record that Patrick forged nine drafts totaling $30,055, and cashed or deposited these into his own account at Hibernia, and these forgeries are not disputed. In October 1999, Joshua informed U.S. Life that he had not received the insurance proceeds and that the address originally listed on the claim form was that of his brother. Joshua later viewed the signatures on the drafts and informed U.S. Life that they were forgeries. U.S. Life determined that it had paid the proper amount of benefits under the insurance contract.
On May 24, 2001, Joshua filed suit in the Twenty-Fourth Judicial District Court against U.S. Life, State Street, and Hibernia. He alleged that U.S. Life was arbitrary and capricious in failing to pay the benefits due to him, and that it wrongfully directed the proceeds to be issued to Patrick's address. He further alleged that U.S. Life should have been on notice of Patrick's fraudulent attempts to make a claim. With regard to State Street, Joshua stated that, relying on information supplied by U.S. Life, State Street wrongfully issued the proceeds of the claim to the wrong address. According to the petition, U.S. Life and State Street were negligent in several particulars, including failing to properly notify Joshua of the proceeds, failing to contact him to confirm or deny the authenticity of the claimant, failing to investigate the source of the claim or investigate, and in issuing the proceeds to an address other than that of Joshua. Joshua averred that Hibernia was negligent in paying on a forged instrument.
At the hearing on the motions for summary judgment, the trial court determined that the action was purely in tort rather than contract and that prescription had run. Even assuming a contractual claim, the court found there was no breach of any demonstrable duty by any of the defendants. *795 The court indicated that, by not filling in his address on the claim form, Joshua was negligent. Further, the court held that Joshua failed to demonstrate that U.S. Life did not follow its usual and customary procedures prior to issuing the proceeds.
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate.[1] A genuine issue of fact is an issue on which reasonable minds could disagree. If reasonable persons could reach only one conclusion based on the state of the evidence, a genuine issue does not remain.[2] According to LSA-C.C.P. art. 966, the burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
On de novo review, we find the court correctly granted summary judgment in favor of Hibernia. Barberot has not shown a contractual obligation that existed between him and Hibernia. Although Barberot may have had an action for conversion against Hibernia,[3] the prescriptive period for bringing such an action has prescribed under LSA-R.S. 10:3-420(f). Further, any possible negligence action has also prescribed.
With regard to U.S. Life, the right of the beneficiary to receive benefits constitutes an interest in the insurance contract which becomes vested at the moment the contract comes into existence.[4] The proceeds of life insurance, if payable to a named beneficiary, pass by virtue of the contract directly from the insurer to the beneficiary named in the policy.[5] As the named beneficiary, Joshua has a cause of action in contract against U.S. Life. Because this is a summary judgment, we are not confined to the petition to determine the viability of a cause of action. On review, we find that Joshua has urged claims against U.S. Life both in tort and in contract, and that the contract action has clearly not prescribed. Not only does LSA-C.C. art. 3499 apply, but U.S. Life has provided in the insurance policy that legal action may be brought within three years after proof of claim is required. The present action was brought within that period.
U.S. Life presented an affidavit indicating that its practice of opening an interest bearing checking account in Joshua's name is its standard practice, as well as standard practice in the industry. According to the Data Processing Services Agreement between State Street and U.S. Life, State Street agreed to perform accounting *796 functions on behalf of U.S. Life, the latter of which retained the benefits or proceeds of the life insurance policies.
In connection with the services to be provided, State Street shall make payment on checks drawn against the account holder's account. State Street shall notify Customer of the total amount paid. Customer agrees to maintain sufficient balances in its clearing account to accommodate the payment of such checks on its behalf.
Thus, it appears that U.S. Life allowed beneficiaries to access the applicable proceeds by making drafts against its account with State Street. By utilizing such an agreement, U.S. Life continued to maintain control over the insurance proceeds due to Joshua. Pursuant to the insurance policy terms, it had a duty to pay those proceeds to the named beneficiary.
Neither the insurance policy nor the claim form state that failure of the beneficiary to completely or accurately sign and fill in the form relieves the insurer of its obligations under the policy. The completion of the form was witnessed by Barthe, who was aware that Patrick had previously attempted to claim the proceeds of the policy. Whether or not Joshua's action in allowing his brother to complete the address form affected the present claim, and the circumstances under which this occurred, are at least some of the questions of fact precluding summary judgment in favor of U.S. Life.
The Instant Access Account maintained by U.S. Life is, according to the Data Processing Agreement, a "Retained Access Account." The drafts or checks in question indicate that they are payable through State Street. The record does not disclose a separate contractual relationship between Joshua and State Street, but rather between State Street and U.S. Life. Therefore, the prescriptive period under LSA-C.C. art. 3499 does not apply to a suit between Joshua and State Street. However, LSA-R.S. 10:3-118(g)(iii) and R.S. 10:4-111 specify a period of three years after a cause of action accrues to commence an action to enforce an obligation, duty, or right arising under the law of negotiable instruments. Subsection (g) covers warranty and conversion cases and other actions to enforce obligations or rights arising under Article 3. According to the record, Joshua's cause of action against State Street has not prescribed.
There does not appear to be a question regarding the principal-mandatary relationship between State Street and U.S. Life. Under the Data Processing Agreement, State Street owed U.S. Life the duty to verify signatures only on checks over $10,000. None of the drafts or checks in question was in that amount. Whether there was a duty on the part of State Street beyond the mandate to verify signatures on checks or drafts under $10,000, and to whom these duties may have been owed, are questions of law. Whether or not State Street properly performed any such potential duty is a question of fact that precludes summary judgment.
For the foregoing reasons, the judgment is affirmed in that Hibernia Bank is entitled to summary judgment in its favor. The judgment regarding U.S. Life and State Street is reversed, and the matter is remanded for further proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Moody v. United Nat'l Ins. Co., 98-287 (La.App. 5 Cir. 9/29/98), 743 So.2d 680, writ denied, 98-2713 (La.12/18/98), 734 So.2d 639.
[2] Reynolds v. Select Properties, supra.
[3] See, e.g., Williams v. Liberty Bank & Trust Co., 98-3008 (La.App. 4 Cir. 11/3/99), 746 So.2d 275.
[4] T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975).
[5] Id.